MARVIN ROMANSKI *et al.*, Plaintiffs-Appellants, *v.* PRAIRIE FARMER *et al.*, Defendants-Appellees.

Second District No. 76-431

Opinion filed December 13, 1977.

Anna D. Marek, of Ontarioville, for appellants.

Carol R. Thigpen, of Jenner & Block, of Chicago, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the order of the circuit court of De Kalb County dismissing the plaintiffs' complaint with prejudice as to Prairie Farmer, for failure to state a claim for which relief could be granted.

The plaintiffs are two farmers who ordered a prefabricated steel building advertised in the defendant newspaper from Modular Steel Structures, Inc., Wonder Building Division, Kansas City, Missouri. The advertisement stated the price for the complete building (not including foundation) was $4,634 FOB Chicago, Illinois. Pursuant to this

advertisement the plaintiffs contacted Modular Steel Structures, Inc. and on March 11, 1974, entered into a contract with them for a building 49 feet by 80 feet, for the advertised price. The plaintiffs paid a security deposit of $2,272.20 and obtained a tentative delivery date of July 22, 1974. In the meantime, they constructed a foundation for the anticipated building. The building was not delivered on the date tentatively agreed upon and on September 11, 1974, the plaintiffs wrote to Prairie Farmer, stating that they had answered an advertisement in the Prairie Farmer, pursuant to which they had ordered a prefabricated steel building from Wonder Building Division; that they made a deposit of $2,272.20, but had not received the building. Prairie Farmer's help was requested in obtaining delivery of the building.

The basis of the plaintiffs' appeal to Prairie Farmer was an alleged "guarantee" in the form of a published statement appearing in each issue of Prairie Farmer which reads as follows:

"PRAIRIE FARMER refuses to publish dishonest advertising. We guarantee our cooperation to subscribers in obtaining fair treatment and reasonable adjustments from advertisers in case any misunderstandings arise, providing subscribers mention Prairie Farmer, when writing to advertisers."

Prairie Farmer acknowledged receipt of this letter on September 30, explained that the employee who would handle the complaint was on vacation and that they would hear from her shortly. A notation in Prairie Farmer's file indicates this was followed up on October 17, by Miss Serpico, the employee referred to, with a telephone call to Mr. Sauter and that she told Mrs. Sauter that they were doing everything possible and would keep her posted and suggesting that Mr. Sauter retain an attorney. Notes on the file indicate Miss Serpico made further inquiries of Modular Technology Corporation, the actual manufacturer of Wonder Buildings in Chicago. On October 29, 1974, Miss Serpico sent a list of persons who had complained to Prairie Farmer about Modular Steel Structures to that company and asked them to keep her posted. The file indicates she followed this up with a call to a Mr. Miller, an employee of Modular Technology Corporation, calling his attention to the Romanski-Sauter order and was informed that the building was almost ready. This was followed up by other calls on October 29 and November 4, at which time Miss Serpico was informed, according to her notes, that the factory was "working on it." On October 29, Miss Serpico wrote to the dealer and advertiser, Modular Steel Structures, in Kansas City, and sent them a list of customers who had complained to Prairie Farmer about buildings not being delivered.

On November 25, 1974, Miss Serpico advised the plaintiffs she had been informed that the manufacturer could not deliver the buildings at the

advertised price and a refund of the deposit was not available. She suggested that they consult with an attorney and also that they might seek assistance from the Attorney General's Office. At this time she gave the plaintiffs the name and address of the Consumer Fraud Division in Springfield, Illinois, and also in Jefferson City, Missouri. She asked that a copy of any letters so addressed by the plaintiffs be furnished to her. The office copy of this letter carries the notation "no reply as of 5/5/75."

At the same time Miss Serpico addressed a detailed letter to Attorney General Scott outlining and summarizing the situation and listing the particular complainants involved. Another letter addressed to Attorney General Scott's office dated February 20, 1975, indicates no reply was received to her letter of November 25. The letter of February 20 made further inquiry as to the status of the matter. On the same day a follow-up letter was written to the plaintiffs inquiring whether they had taken any further action as suggested in Miss Serpico's letter of November 25, 1974.

On February 26, 1975, Attorney General Scott's office acknowledged the letter of February 20, 1975, and advised Miss Serpico that numerous complaints had been filed against Modular Steel Structures, Inc., and that an investigation was being launched by his office. On November 10, 1975, a notation concerning a telephone call made by Miss Serpico to Modular Steel Structures indicates it was engaged in a Chapter XI reorganization. This was followed up by Miss Serpico's subsequent telephone calls to Modular Steel Structures on March 11 and April 7, 20 and 27, 1976.

In February of 1976, the plaintiffs filed suit against Prairie Farmer, Modular Steel Structures, Inc. (Wonder Building Division—the dealer), and Modular Technology Corporation—the manufacturer. The complaint is in four divisions designated "First Cause of Action," "Second Cause of Action," etc., aggregating 26 paragraphs. However, the heart of the complaint, so far as the defendant, Prairie Farmer, is concerned, is contained in paragraphs 2, 3, and 4 of the "First Cause of Action," the gist of which is that (1) the defendant, Prairie Farmer, carried an advertisement stating that a Wonder Steel Building, size 49 feet by 80 feet, could be purchased from the defendant, Modular Steel Structures, for $4,634; (2) that these representations were false, "and known to be false by the defendant, Prairie Farmer at the time they were made"; (3) that Prairie Farmer regularly carried the printed statement quoted above in its newspaper; (4) that the quoted statement regarding their advertising induced the plaintiffs to enter into a contract with the defendants, Modular Steel Structures, Inc. and Modular Technology Corporation, whereby the plaintiffs were defrauded of their deposit and suffered the expense of providing a useless foundation.

The legal theory of the plaintiffs' case against Prairie Farmer is not clear from the complaint—that is, whether it has its basis in fraud or in contract

on a theory of guarantee, but it appears from the answer to the motion to dismiss the complaint that the case against Prairie Farmer is based on the theory of guarantee. In their answer to the motion to dismiss, the plaintiffs state that "plaintiffs based their suit on the defendant Prairie Farmers guarantee that 'Prairie Farmer refused to publish dishonest advertising.'" Since the plaintiffs in their pleadings and briefs have set forth the theory of their case as being founded on the "guarantee" in the statement quoted above, this appeal from the ruling on the motion to dismiss must be resolved on that basis.

■■ We might remark at the outset that we do not think that the word "guarantee," as used in the Prairie Farmer statement, was intended to have the legal significance which has developed in connection with the law of sales, where it has reference to the quality or performance of tangible things. As used here, we think it means a legally binding obligation to do the things set out after the word "guarantee," but no more than that.

The plaintiffs' case thus depends entirely upon the legal effect of the defendant's printed statement, *i.e.*, "Prairie Farmer refuses to publish dishonest advertising." Plaintiffs' case is based on the theory that since the statement was followed by the language, "We guarantee our cooperation to subscribers in obtaining fair treatment and reasonable adjustments from advertisers in case any misunderstandings arise * * *," that the statement preceding the word "guarantee" is included in the guarantee, and furthermore, that any failure of an advertiser to perform in accordance with the advertisement constitutes "dishonest advertising."

■■ It is our opinion that the first sentence in the quoted paragraph is not a guarantee. It is followed by a guarantee, but is not included in the guarantee. We cannot regard it as any more than an expression of policy and the "guarantee" following that first sentence is merely an affirmation of that policy, to a specific pledge or guarantee of assistance to the subscribers of Prairie Farmer who believe they were deceived or defrauded by an advertisement appearing in that publication. The statement "Prairie Farmer refuses to publish dishonest advertising" must be understood not as a warranty or guarantee that there will be no dishonest advertising in that publication, but rather that where an advertisement is known or thought to be dishonest, publication of it will be refused. But the advertisement or the contract offered thereby or the thing advertised, are not guaranteed—only the policy set forth following the word "guarantee" is guaranteed. That is to say, it is guaranteed in the sense that Prairie Farmer will hold itself answerable for the carrying out of the announced policy.

The plaintiffs do not allege that the defendant did not carry out its promise to cooperate with and assist the plaintiffs as subscribers to Prairie

Farmer in attempting to obtain satisfaction from the advertiser. If such allegation had been made, however, it would be easily refuted by the evidence supplied by the defendant by way of exhibits and affidavits attached to its motion to dismiss which amply demonstrate the effort Prairie Farmer made (as we cited above in this opinion in some detail) to carry out its undertaking to assist the plaintiffs in their difficulties. We think the defendant amply demonstrated its good faith in carrying out that "policy."

■■ Moreover, it is by no means certain that at the time the advertisement in question created the inquiry by the plaintiffs leading eventually to the unfortunate contract, that the advertisement itself *was* dishonest. It appears from the affidavits and exhibits of correspondence and notes of telephone conversations in the Prairie Farmer file that the cause of Modular Steel Structures' default was the development of an unexpected financial crisis, brought on, or at least contributed to, by a sudden increase in steel prices. The advertisement which induced the contract appeared no later than March of 1974—possibly earlier. A plea for assistance was made by the plaintiffs in their letter of September 11, 1974, but it did not hint of dishonesty or fraud, rather it solicited Prairie Farmer's help in expediting delivery of the building and insisted the contract be performed. Whether the advertisers were dishonest or merely financially vulnerable at the time the advertisement appeared in Prairie Farmer is a matter of speculation. It cannot be assumed, as the plaintiffs have done, that because Modular Technology Corporation developed financial troubles which eventually prevented them from completing the contract, that the advertisement of March 1974, or earlier, was a dishonest advertisement in the sense that it was fraudulent.

■■ Nor can the plaintiffs' argument that printing a statement promising to police its advertisers made Prairie Farmer thereby liable to inquire into the financial condition of its advertisers, before accepting their advertisements, be sustained. Such an interpretation would go far beyond what is customary, practicable, or even possible for a newspaper to do and far beyond what its quoted statement obligated it to do. We feel the statement merely indicated a conscientious attitude on the part of Prairie Farmer toward its subscribers.

■■ In our opinion, the statement "Prairie Farmer refuses to accept dishonest advertising," followed by a "guarantee" to assist a subscriber to get satisfactory adjustment from its advertisers, if there was difficulty, does not sustain an action at law against Prairie Farmer, based on failure by the advertiser to perform a specific contract. Whatever was promised by way of guarantee or warranty by Prairie Farmer was amply demonstrated to have been performed and there was no liability on Prairie Farmer's part to do more.

The judgment of the circuit court of De Kalb County is therefore affirmed.

Judgment affirmed.

BOYLE and WOODWARD, JJ., concur.